1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12  YASMIN SMITH
                                NO. CIV. 2-09-00607 FCD/KJM
13
            Plaintiff,
14
        v.                      MEMORANDUM AND ORDER
15

16  COUNTRYWIDE FINANCIAL
    CORPORATION, COUNTRYWIDE HOME
17  LOANS, INC., COUNTRYWIDE BANK,
    MORTGAGE ELECTRONIC
18  REGISTRATION SYSTEMS, INC., a
    suspended California
19  corporation, DEBRA DELGADO,
    RECONSTRUST COMPANY, N.A. and
20  DOES 1-20 inclusive,

21
            Defendants.
22
                           ----oo0oo----
23

24      This matter is before the court on defendants Countrywide

25  Bank ("CB"), Countrywide Home Loans, Inc. ("CHL"), Mortgage

26  Electronic Registration Systems, Inc. ("MERS"), and Countrywide

27  Financial Corporation's ("CFC") (collectively "defendants")

28  motions to dismiss plaintiff's First Amended Complaint ("FAC")

                                1

1  for failure to state a claim on which relief may be granted

2  pursuant to Federal Rule of Civil Procedure 12(b)(6) and for

3  failure to allege the purported causes of action based on fraud

4  or concealment with particularity pursuant to Rule 9(b).

5  Plaintiff Yasmin Smith ("plaintiff") opposes the motions.  For

6  the reasons set forth below,[1] defendants' motion to dismiss is

7  GRANTED.[2]

**BACKGROUND**

9      In July 2007, plaintiff was looking to relocate her day care

10  business to California and was in need of a home loan. (First Am.

11  Compl. ("FAC"), filed June 8, 2009, 6:5-6.)  Plaintiff alleges

12  she met with CHL loan officer Debra Delgado ("Deldgado"), who

13  informed plaintiff that she qualified for the loan based upon her

14  credit score alone and that Delgado could get her the "best deal"

15  and the "best interest rates."  (Id. at 6:6-12.)  Relying on this

16  representation, plaintiff entered into a "consumer credit

17  transaction" with defendants and also "entered into one loan as

18  part of the loan transaction, a first deed." (Id. at 7:2-5.)

19  Plaintiff claims that she was not only advised that defendants

20  would refinance to a lower interest rate and payment after a

21  year, but that she could refinance if the loan became

22  unaffordable. (Id. at 6:15-17)  Plaintiff alleges that she relied

---

[1]   Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[2]   Defendants also move to strike all allegations that are allegedly copied from other complaints pursuant to Rule 12(f) and for a more definite statement pursuant to Rule 12(e).  Because the court grants defendants' motion to dismiss, the court does not reach the merits of these motions.

on this representation to her detriment. (*Id.* at 6:11-14.)
Plaintiff claims that she was not given a copy of the loan
documents prior to closing as required, and that at the time of
closing, she was rushed to sign the documents (*Id.* at 6:20-24)
She further alleges that the loan documents were never explained
to her, she was never given the opportunity to review them, and
she never received the required copies of the notice of
cancellation.  (*Id.*)

Plaintiff asserts that on or about August 21, 2007, she
completed the loan transaction.  The terms of the loan were
included in the promissory note, secured by a deed of trust on
the property, which identified Recontrust Company as trustee, and
Countrywide Bank ("CB") as the lender.  (*Id.* at 7:1-4.)
Plaintiff claims that Mortgage Electronic Registration Systems,
Inc. ("MERS") was also the named nominee and beneficiary. (*Id.* at
7:5-6) Plaintiff alleges that when the loan was completed, she
did not receive "the required documents and disclosures,
including, but not limited to, the Truth in Lending Disclosure
Statement containing real disclosures and the required number of
copies of the Notice of Right to Cancel." (*Id.* at 8:9-13.)

On February 10, 2009, plaintiff allegedly sent a Qualified
Written Request to defendants pursuant to the Real Estate
Settlement Procedures Act ("RESPA"), which demanded cancellation
of the pending Trustee Sale and rescission of the loan pursuant
to the provisions of the Truth in Lending Act ("TILA"). (*Id.* at
7:13-16.)  Plaintiff claims that as a direct and proximate result
of the CHL and CB's actions of malice, oppression and fraud,
/////

plaintiff is entitled to damages for direct monetary loss, consequential damages, and emotional distress.

In her First Amended Complaint, plaintiff asserts claims for 1) violation of TILA, 15 U.S.C. §§ 1601 *et seq.*; 2) violation of the Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), 3) negligence, 4) violation of RESPA, 12 U.S.C. §§ 2601 *et seq.*, 5) breach of fiduciary duty, 6) fraud, 7) violation of California Business and Professions Code § 17200; 8) breach of contract, 9) breach of implied covenant of good faith and fair dealing, and 10) wrongful foreclosure.

Defendants now move to dismiss plaintiff's claims for failure to state cognizable claims on which relief can be granted. (Defs.' P. & A. In Supp. of MTD ("MTD"), June 24, 2009, 4:23-25.)  Defendants also move to strike portions of plaintiff's First Amended Complaint or in the alternative, for a more definite statement.

**STANDARDS**

Under Federal Rule of Civil Procedure 8(a), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." See <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002).

4

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief. Twombley, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

Nevertheless, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555; Iqbal, 129 S. Ct. at 1950 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

1   Ultimately, the court may not dismiss a complaint in which
2   the plaintiff has alleged "enough facts to state a claim to
3   relief that is plausible on its face."  Iqbal, 129 S. Ct. at 1949
4   (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 554, 570
5   (2007)).  Only where a plaintiff has failed to "nudge [his or
6   her] claims across the line from conceivable to plausible," is
7   the complaint properly dismissed.  Id. at 1952.  While the
8   plausibility requirement is not akin to a probability
9   requirement, it demands more than "a sheer possibility that a
10  defendant has acted unlawfully."  Id. at 1949.  This plausibility
11  inquiry is "a context-specific task that requires the reviewing
12  court to draw on its judicial experience and common sense."  Id.
13  at 1950.

14  In ruling upon a motion to dismiss, the court may consider
15  only the complaint, any exhibits thereto, and matters which may
16  be judicially noticed pursuant to Federal Rule of Evidence 201.
17  See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th
18  Cir. 1988); Isuzu Motors Ltd. V. Consumers Union of United
19  States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

20                              **ANALYSIS**
21  **A.   Claims Against Countrywide Financial Corporation**

22  Defendants assert that CFC should be dismissed as a party to
23  this action due to plaintiff's failure to allege any facts
24  implicating CFC.  "It is the general rule that a parent
25  corporation and its subsidiary will be treated as separate legal
26  entities."  Current Inc. v. State Bd. of Equalization, 24 Cal.
27  App. 4th 382, 391 (1st Dist. 1994); Laird v. Capital Cities/ABC,
28  Inc., 68 Cal. App. 4th 727, 741 (3d Dist. 1998).  "The alter ego

doctrine is one exception to the rule where a parent corporation will be found liable for the actions of its subsidiary when there is (1) such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and (2) that if the acts are treated as those of the corporation alone, an inequitable result will follow." <u>Pantoja v. Countrywide Home Loans, Inc.</u>, 2009 U.S. Dist. LEXIS 70856 (N.D. Cal. July 9, 2009) (citing <u>Automotriz Del Golfo De California v. Resnick</u>, 47 Cal. 2d 792, 796 (1957); <u>United States v. Healthwin-Midtown Convalescent</u>, 511 F. Supp. 416, 418 (C.D. Cal. 1981) *affirmed* 685 F.2d 448 (9th Cir. 1982).   Another exception to the general rule is when the subsidiary is the agent of the parent, which requires a showing that the parent so controls the subsidiary as to cause the subsidiary to be become merely the instrumentality of the parent.   <u>Laird</u>, 68 Cal. App. 4th at 741.   A parent corporation contributing funds to a subsidiary is not enough to find alter ego or agency liability. <u>Sonora Diamond Corp. v. Superior Court</u>, 83 Cal. App. 4th 523, 539, 541 (5th Dist. 2000).

While plaintiff references defendant CFC as a wrongdoer in the overall conspiracy of providing unaffordable home loans and initiating in unfair business practices, the FAC fails to allege any facts supporting a connection between CFC and the various claims for relief asserted.   Further, plaintiff fails to allege any factual assertions which would implicate CFC's liability as an alter ego or agent of other named corporate defendants. Accordingly, defendants' motion to dismiss all claims asserted against CFC is GRANTED.

**B.    TILA**

    **1.    Damages**

    Plaintiff's first claim for relief alleges a violation of the Truth in Lending Act ("TILA") against defendants CHL and CB. Defendants argue that the civil damages portion of plaintiff's TILA violation claim is time barred.  Plaintiff asserts that the statutory period has not expired based on equitable tolling.

    TILA provides that a plaintiff can bring an action to recover damages "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e).  In <u>King</u>, the Ninth Circuit held that equitable tolling of civil damages claims brought under TILA might be appropriate "in certain circumstances."  <u>King v. State of California</u>, 784 F.2d 910, 915 (9th Cir. 1986).  The court noted that a borrower may not have a reasonable opportunity within one year to discover the fraud or nondisclosures that form the basis of a TILA action and that, through TILA, Congress "sought to protect consumer's choice through full disclosure and to guard against the divergent and at times fraudulent practices stemming from uninformed use of credit."  <u>Id.</u>  As such, the Ninth Circuit explained that "district courts . . . can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly."  <u>Id.</u>  When determining whether the statute of limitations period has expired for the purposes of a motion to dismiss, a court can only grant the motion "if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that

the statute was tolled."  Supermail Cargo, Inc. v. U.S., 68 F.3d 1204, 1206 (9th Cir. 1995).

In this case, defendants contend, and plaintiff does not dispute, that the alleged TILA violations occurred no later than August 21, 2007, the date plaintiff entered into the loan agreement with defendants.  (MTD 8:3-4.)  Accordingly, since plaintiff did not bring her claim until March 3, 2009, more than one year has elapsed since the alleged TILA violation.

Plaintiff argues that equitable tolling may apply to her TILA claim because it based upon defendants' alleged failure to clearly and conspicuously disclose various terms of the loan. (FAC at 8:17-20; 9:19-23.)  However, plaintiff pleads no other facts to explain how defendants concealed the true facts or why plaintiff could not otherwise have discovered the TILA violations at the consummation of her loan.  "Such factual underpinnings are all the more important . . . since the vast majority of [p]laintiff's] alleged violations under TILA are violations that are self-apparent at the consummation of the transaction." Cervantes v. Countrywide Home Loans, Inc., 2009 U.S. Dist. LEXIS 87997, at ** 13-14 (D. Ariz. Sept. 23, 2009) (holding that equitable tolling was not appropriate when plaintiffs simply alleged that defendants "fraudulently misrepresented and concealed the true facts related to the items subject to disclosure").

Accordingly, defendants' motion to dismiss plaintiff's claim for civil damages based on violation of TILA is GRANTED.

/////

/////

1        **2.    Rescission**

2        In her claim for rescission under TILA, plaintiff contends

3   that, as a result of defendants' failure to provide the required

4   disclosure statements, she has a continuing right to rescission.

5   (FAC 11:20-22.)  Defendants CHL and CB assert that plaintiff's

6   rescission claim under TILA must be dismissed because, under

7   TILA, rescission is dependent on the borrower's ability to return

8   the loan principal, which plaintiff has not adequately alleged.

9        15 U.S.C. § 1635(b) "adopts a sequence of rescission and

10  tender that must be followed unless the court orders otherwise:

11  within twenty days of receiving a notice of rescission, the

12  creditor is to return any money or property and reflect

13  termination of the security interest; when the creditor has met

14  these obligations, the borrower is to tender the property."

15  Yamamoto v. Bank of N.Y., 329 F. 3d 1167, 1170 (9th Cir. 2003).

16  The Ninth Circuit has held that rescission under TILA "*should* be

17  conditioned on repayment of the amounts advanced by the lender."

18  Id. (emphasis in original).  A number of California district

19  courts have required a plaintiff to plead facts relating to the

20  ability to tender the loan principal in order to withstand a

21  12(b)(6) motion to dismiss and proceed with a claim for

22  rescission under TILA.  Garza v. Am. Home Mortgage, 2009 WL

23  188604 at *5 (E.D. Cal. Jan. 27, 2009) ("rescission is an empty

24  remedy without [plaintiff's] ability to pay back what she has

25  received"); Serrano v. Sec. Nat'l Mortg. Co., 2009 U.S. Dist.

26  Lexis 71725 (S.D. Cal. Aug. 14, 2009) ("If Plaintiff continues to

27  seek rescission under TILA, he must tender the owed amount or

28  provide proof of his ability to tender"); Pesayco v. World Sav.,

1  Inc., 2009 U.S. Dist. LEXIS 73299 (C.D. Cal. July 29, 2009) ("[A]
2  claim for TILA rescission will only be able to succeed if
3  Plaintiff can show the ability to tender the principal of the
4  subject loan.").

5      Plaintiff has failed to allege any facts relating to her
6  ability to tender the loan principal.  Accordingly, defendants'
7  motion to dismiss plaintiff's claim for rescission under TILA is
8  GRANTED.

9  **C.    RFDCPA**

10      Plaintiff's second claim for relief alleges that defendants
11  CHL, CB, CFC, and MERS violated the California Rosenthal Act
12  ("RFDCPA").  Specifically, plaintiff claims that defendants
13  threatened to take actions not permitted by law, including but
14  not limited to: foreclosing upon a void security interest;
15  foreclosing upon a note of which they were not in possession nor
16  otherwise entitled to payment; falsely stating the amount of a
17  debt; increasing the amount of a debt by including amounts that
18  are not permitted by law or contract; and using unfair and
19  unconscionable means in an attempt to collect a debt.  (FAC at
20  12:22-27.)

21      The purpose of the RFDCPA is "to prohibit debt collectors
22  from engaging in unfair or deceptive acts or practices in the
23  collection of consumer debts and to require debtors to act fairly
24  in entering into and honoring such debts."  Cal. Civ. Code §
25  1788.1(b).  Under the RFDCPA, a "debt collector" is defined as
26  "any person who, in the ordinary course of business, regularly,
27  on behalf of himself or herself or others, engages in debt
28  collection."  (Cal. Civ. Code. § 1788.2(c)).  A debt collector

violates the act when it engages in harassment, threats, the use
of profane language, false simulation of the judicial process, or
when it cloaks its true nature as a licensed collection agency in
an effort to collect a debt.  See Cal. Civ. Code §§ 1788.10-
88.18; see also Hernandez v. Cal. Reconveyance Co., 2009 U.S.
Dist. LEXIS 13936, at * 13 (E.D. Cal. Feb. 23, 2009) (holding
that a RFDCPA claim failed because the complaint lacked
allegations of harassment or abuse, false or misleading
representations of the debt collector's identity, or unfair
practices during the process of collecting debt).  The RFDCPA is
not applicable until after a loan is made and does not constitute
a lending regulation.  See Alkan v. Citimortgage, Inc., 336 F.
Supp. 2d 1061, 1064 (N.D. Cal. 2004).  Moreover, foreclosing on a
deed of trust does not implicate the RFDCPA.  See e.g. Benham v.
Aurora Loan Servs., 2009 U.S. Dist. LEXIS 78384, at *6 (N.D. Cal.
Sept. 1, 2009) (dismissing plaintiff's complaint "because
foreclosing on a property pursuant to a deed of trust is not the
collection of a debt within the meaning of the RFDCPA"); Ricon v.
Recontrust Co., 2009 U.S. Dist. LEXIS 67807, at *9 (S.D. Cal.
Aug. 4, 2009); Hepler v. Wash. Mut. Bank, F.A., 2009 U.S. Dist.
LEXIS 33883, at *11 (C.D. Cal. April 17, 2009).

Plaintiff's complaint fails to allege any facts supporting
how defendants violated the RFDCPA.  Rosal v. First Fed. Bank of
Cal., 2009 U.S. Dist. Lexis 60400 (N.D. Cal. July 15, 2009)
(dismissing the plaintiff's complaint where it did not allege
facts giving rise to the inference that any of the defendants is
a debt collector as defined by the RFDCPA" nor assert what
provisions of the RFDCPA defendants allegedly violated).

1   Plaintiff does not allege that defendants used threats,

2   harassment, or profane language to collect a debt after the loan

3   was made.  Further, plaintiff fails identify who among defendants

4   acted as a debt collector pursuant to the RFDCPA.  See Fuentes v.

5   Deutsche Bank, 2009 U.S. Dist. LEXIS 57931 (S.D. Cal. July 8,

6   2009) (granting defendant's motion for judgment "[s]ince a

7   residential mortgage is not a debt and a home foreclosure is not

8   debt collection within the meaning of the statute"); Gamboa v.

9   Trustee Corps, 2009 WL 656285 (N.D. Cal. March 12, 2009) ("[T]he

10  law is clear that foreclosing on a property pursuant to a deed of

11  trust is not a debt collection within the meaning of the

12  RFDCPA.").

13      Accordingly, defendants' motion to dismiss plaintiff's

14  second claim for violation of RFDCPA is GRANTED.

15  **D.   Negligence**

16      Plaintiff's third claim for relief alleges that all

17  defendants were negligent in directing her into a loan

18  transaction against industry standards, resulting in

19  unnecessarily increased fees, which defendants knew were in

20  excess of what plaintiff could afford.  (FAC at 13:16-19.)

21  Further, plaintiff alleges that defendants failed to maintain the

22  original mortgage note and to make the statutorily required

23  disclosures to plaintiff.  Defendants contend that plaintiff's

24  claim fails because she has failed to plead sufficient facts

25  supporting a duty owed by them to plaintiff.

26      The elements of a cause of action for negligence are (1) a

27  legal duty to use reasonable care, (2) breach of that duty, and

28  (3) proximate [or legal] cause between the breach and (4) the

plaintiff's injury." <u>Mendoza v. City of Los Angeles</u>, 66 Cal. App. 4th 1333, 1339 (1998).  "The question of the existence of a legal duty of care . . . presents a question of law which is to be determined by the courts alone." <u>First Interstate Bank of Ariz., N.A. v. Murphy, Weir & Butler</u>, 210 F.3d 983, 987 (9th Cir. 2000).  "Absent the existence of duty ... , there can be no breach and no negligence." <u>Nichols v. Keller</u>, 15 Cal. App. 4th 1672, 1683 (1993); <u>Nymark v. Heart Fed. Savings & Loan Assn.</u>, 231 Cal. App. 3d 1089, 1096 (Cal. App. 3d Dist. 1991) ("The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence.") (citations omitted).

    "Under California law, a lender does not owe a borrower or third party any duties beyond those expressed in the loan agreement, except[] those imposed due to special circumstance." <u>Resolution Trust Corp. v. BVS Dev.</u>, 42 F.3d 1206, 1214 (9th Cir. 1994) (citing <u>Nymark</u>, 231 Cal. App. 3d at 1096 (1991)); <u>see also</u> <u>Cataulin v. Wash. Mut. Bank</u>, 2009 U.S. Dist. LEXIS 59708, at *6 (S.D. Cal. July 13, 2009); <u>Spencer v. DHI Mortgage Co.</u>, 2009 U.S. Dist. LEXIS 55191, at *8 (E.D. Cal. June 30, 2009); <u>Mangindin v. Wash. Mut. Bank</u>, 2009 U.S. Dist. LEXIS 51231, at *21 (N.D. Cal. June 17, 2009).  Special circumstances arise when a lender actively participates in the financed enterprise.  <u>See</u> <u>Nymark</u>, 231 Cal. App. 3d at 1096; <u>Wagner v. Benson</u>, 101 Cal. App. 3d 27, 35 (1980) ("Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise beyond the domain of the usual money lender.").  A lender may also be secondarily liable through the actions of a

mortgage broker, who has a fiduciary duty to its borrower-client, if there is an agency relationship between the lender and the broker.  <u>See</u> <u>Plata v. Long Beach Mortg. Co.</u>, 2005 U.S. Dist. LEXIS 38807, at *23 (N.D. Cal. Dec. 13, 2005).

In her complaint, plaintiff describes nothing more than an arms-length loan transaction between defendants and herself. Plaintiff also does not allege that defendant actively participated in the financed enterprise beyond the usual practices associated with the lending business.  As such, under the facts pled in the complaint, defendants owe plaintiff no duty of care.  Therefore, defendants' motion to dismiss plaintiff's negligence claim is GRANTED.

**E.   RESPA**

Plaintiff's fourth claim for relief alleges that defendants CHL and CB violated the Real Estate Settlement Procedures Act ("RESPA") pursuant to 12 U.S.C. § 2605 et seq. by failing to correctly and accurately comply with disclosure requirements at the time of closing on the sale of the property.  Plaintiff specifically alleges that defendants violated 12 U.S.C. § 2605(e)(2) by failing to provide a written explanation or response to plaintiff's qualified written request ("QWR"). Defendants move to dismiss plaintiff's RESPA claim  because the allegations reflect that the "QWR" did not challenge the accuracy of the account or information regarding servicing of the loan and thus, do not meet the description in Section 2605(e)(1).

Section 2605 requires a loan servicer to provide disclosures relating to the assignment, sale, or transfer of loan servicing to a potential or actual borrower: (1) at the time of the loan

application, and (2) at the time of transfer.  12 U.S.C. § 2605.
The loan servicer also has a duty to respond to a borrower's
inquiry or "qualified written request."  12 U.S.C. § 2605(e).  A
qualified written request is a written correspondence that
enables the servicer to identify the name and account of the
borrower.  12 U.S.C. § 2605(e)(1).  It also either includes a
statement describing why the borrower believes that the account
is in error or provides sufficient detail to the servicer
regarding other information sought by the borrower.  Id.  The
loan servicer is required to respond by making appropriate
corrections to the borrower's account, if necessary and, after
conducting an investigation, providing the borrower with a
written clarification or explanation.  12 U.S.C. § 2605(e)(2).
Pursuant to § 2605(i), "'servicing' means receiving any scheduled
periodic payments from a borrower . . . and making the payments
of principal and interest and such other payments with respect to
the amounts received from the borrower."

Plaintiff alleges that on February 10, 2009, she mailed a
QWR to defendant CHL, which included a demand to cancel the
pending Trustee Sale and for rescission pursuant to TILA. (FAC at
7:13-15.)  According to the allegations in the complaint, the
February 10, 2009 letter "simply disputed the validity of the
loan and not its servicing."  Consumer Solutions REO, LLC v.
Hillery, -- F. Supp. 2d --, 2009 WL 2711264 (Aug. 26, 2009 N.D.
Cal. 2009); see MorEquity, Inc. v. Naeem, 118 F. Supp. 2d 885,
900-01 (N.D. Ill.2000) (noting that the "[t]he counterclaim
alleges [that the request alleged] a forged deed, and
irregularities with respect to the recoding of the two loans, but

[made] no claim with respect to improper servicing" and therefore dismissing claim pursuant to § 2605(e)).  As such, plaintiff has failed to set forth facts alleging that she sent a valid and actionable QWR to defendant.

Accordingly, defendants' motion to dismiss plaintiff's RESPA claim is GRANTED.[3]

**F.   Breach of Fiduciary Duty**

Plaintiff's fifth claim for relief alleges that defendant CB breached its fiduciary duties to act primarily for plaintiff's benefit by allegedly obtaining a loan with unfavorable terms, failing to disclose the negative consequences of the loan, and securing a secret profit by failing to comply with TILA, RESPA and engaging in unfair business practices.  Defendants move to dismiss the claim on the basis that a lending institution does not owe a fiduciary duty to a borrower.

Plaintiff's claim fails for the same reason the negligence claim fails.  In order to sustain a claim for breach of a fiduciary duty, "a plaintiff must demonstrate the existence of a fiduciary relationship, breach of that duty and damages." Serrano v. Sec. Nat'l Mortg. Co., 2009 U.S. Dist. LEXIS 71725 (S.D. Cal. Aug. 14, 2009) (citing Shopoff & Cavallo LLP v. Hyon, 167 Cal. App. 4th 1489, 85 Cal. Rptr.3d 268, 285 (Cal. Ct. App.

---

[3]    Plaintiff also asserts that defendants violated RESPA at the time of closing on the sale of the property by failing to correctly and accurately comply with disclosure requirements. However, plaintiff fails to allege any facts pertaining to which defendant(s) failed to correctly and accurately comply with disclosure requirements and what documents the defendant(s) failed to provide.  In the absence of any facts supporting plaintiff's contention that defendants failed to comply with disclosure requirements, plaintiff fails to allege a cognizable RESPA cause of action on this basis.

2008).  "Absent special circumstances, a loan transaction is at arms-length and there is no fiduciary relationship between the borrower and lender."  Rangel v. DHI Mortgage Co., Ltd., 2009 U.S. Dist. LEXIS 65674, at *8 (E.D. Cal. July 20, 2009); see also e.g. Tasaranta v. Homecomings Fin., 2009 U.S. Dist. LEXIS 87372, at *15 (S.D. Cal. Sept. 21, 2009); Brittain v. IndyMac Bank, FSB, 2009 U.S. Dist. LEXIS 84863, at * 14 (N.D. Cal. Sept. 16, 2009); Dinsmore-Thomas v. Ameriprise Fin., Inc., 2009 U.S. Dist. LEXIS 68882, at *29 (C.D. Cal. Aug. 3, 2009); Fox & Carskadon Financial Corp. v. San Francisco Fed. Sav. & Loan Assn. 52 Cal. App. 3d 484, 488, 489 (1st Dist. 1975); Bradler v. Craig, 274 Cal. App. 2d 466, 473, 476 (2d Dist. 1969).

Because, as set forth above, plaintiff has failed to allege any facts that would give rise to a fiduciary relationship between defendants and herself, defendants' motion to dismiss plaintiff's claim for breach of fiduciary duty is GRANTED.

**G.   Fraud**

Plaintiff's sixth claim for relief alleges that all defendants committed fraud by intentionally and falsely representing to plaintiff that she qualified for a loan based upon her credit score alone and that defendants would refinance to a lower interest rate and payment in one year.  Plaintiff claims that she relied upon such representations in purchasing the property, but that on or about June 10, 2008, defendants caused a Notice of Default to be issued and recorded and executed a foreclosure.  Defendants move to dismiss plaintiff's fraud claim for failure to satisfy Rule 9(b)'s heightened pleading requirements.

Under California law, the elements of common law fraud are "misrepresentation, knowledge of its falsity, intent to defraud, justifiable reliance, and resulting damages." Gil v. Bank of Am., Nat'l Ass'n, 138 Cal. App. 4th 1371, 1381 (2006). A court may dismiss a claim grounded in fraud when its allegations fail to satisfy Rule 9(b)'s heightened pleading requirements. Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1107 (9th Cir. 2003). Therefore, plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In other words, the plaintiff must include "the who, what, when, where, and how" of the fraud. Id. at 1106 (citations omitted). "The plaintiff must set forth what is false or misleading about a statement, and why it is false." Decker v. Glenfed, Inc., 42 F.3d 1541, 1548 (9th Cir. 1994). The purpose of Rule 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations. Concha v. London, 62 F.3d 1493, 1502 (9th Cir. 1995). "Without such specificity, defendants in these cases would be put to an unfair advantage, since at the early stages of the proceedings they could do no more than generally deny any wrongdoing." Id. (citing Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

Furthermore, "Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007). When

asserting a fraud claim against a corporation, "the plaintiff's burden . . . is even greater. . . . The plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written.'" Lazar v. Superior Court, 12 Cal. 4th 631, 645 (1996) (quoting Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal. App. 4th 153, 157 (1991)); see also Edejer, 2009 U.S. Dist. LEXIS 52900 at *36 (dismissing the fraud claim where the plaintiff did not allege any misrepresentation or false statements made by the defendants; did not allege the names of the persons who made the allegedly fraudulent representations and their authority to speak; and did not allege with sufficient particularity or clarity what was false or misleading about the statements); Mohammad Akhavein v. Argent Mortgage Co., 2009 U.S. Dist. LEXIS 61796, at *10 (N.D. Cal. July 17, 2009); Spencer v. DHI Mortgage Co., 2009 U.S. Dist. LEXIS 55191, at *18 (E.D. Cal. June 30, 2009) (dismissing the plaintiff's fraud claim without leave to amend because it failed to satisfy Rule 9(b)'s "'who, what, when, where and how' requirements" and was so deficient as to "suggest no potential improvement from an attempt to amend").

In this case, plaintiff fails to satisfy the heightened pleading requirements of Rule 9(b) with respect to her allegations against defendants.  Plaintiff fails to allege what false statements were made by CHL or MERS.  Assuming plaintiff alleges that Delgado made the allegedly false statements on behalf of CB, plaintiff fails to allege any facts relating to Delgado's authority to make such representations on its behalf.

Nor did plaintiff allege with sufficient particularity or clarity
what is false or misleading about the statement or why it is
false.  Accordingly, defendant motion to dismiss plaintiff's
sixth claim for relief is GRANTED.

**H.    Breach Of Contract**

Plaintiff's eighth claim for relief alleges breach of
contract against defendants Delgado and CB.  Defendants argue
that plaintiff's claims must be dismissed for failure to state a
claim upon which relief may be granted.

In California, "[a] cause of action for breach of contract
requires proof of the following elements: (1) existence of the
contract; (2) plaintiff's performance or excuse for
nonperformance; (3) defendant's breach; and (4) damages to
plaintiff as a result of the breach." CDF Firefighters v.
Maldonado, 158 Cal. App. 4th 1226, 1239 (2008).  "Resolution of
contractual claims on a motion to dismiss is proper if the terms
of the contract are unambiguous." Monaco v. Bear Stearns
Residential Mortgage Corp., -- F. Supp. 2d --, No. CV 07-05607
SJO (CTX), 2008 WL 867727, at *5 (C.D. Cal. 2008).  "A contract
provision will be considered ambiguous when it is capable of two
or more reasonable interpretations." Id. (citing Bay Cities
Paving & Grading, Inc. v. Lawyers' Mut. Ins. Co., 855 P.2d 1263,
1271 (Cal. 1993)).  "[T]he language of a contract should be
interpreted most strongly against the party who caused the
uncertainty to exist."  Cal. Civ. Code § 1654.

With respect to an oral contract to restructure the terms of
a loan, the agreement must embody definite terms, capable of
enforcement, in order to constitute a legal contract. Price v.

21

1   <u>Wells Fargo Bank</u>, 213 Cal. App. 3d 465, 483 (1st Dist. 1989)

2   (noting that "the terms of a restructuring agreement obviously

3   may vary as widely as the terms of the original agreement").

4   "Preliminary negotiations or an agreement for future negotiations

5   are not the functional equivalent of a valid, subsisting

6   agreement." <u>Id.</u> (quoting <u>Kruse v. Bank of Am.</u>, 202 Cal. App. 3d

7   38, 59 (1st Dist. 1988)).  Moreover, the mere "understanding"

8   that a loan or mortgage would be restructured is insufficient to

9   state a claim for breach of contract.   <u>Id.</u>

10      In this case, plaintiff merely alleges that defendant

11  promised to refinance plaintiff's loan to a lower rate after a

12  year or when the loan became unaffordable.  Plaintiff contends

13  that defendant CB breached this contract by failing to refinance

14  the loan.  Because plaintiff's allegations fail to set forth any

15  facts alleging a valid, enforceable contract under California

16  law, she has failed to state a viable claim for breach of such a

17  contract.  Accordingly, defendants' motion to dismiss plaintiff's

18  eighth claim for relief is GRANTED.

19  **I.   Wrongful Foreclosure**

20      Plaintiff's tenth cause of action alleges a wrongful

21  foreclosure claim against defendants CHL and Recontrust.

22  Defendants contend that plaintiff's claim must fail because it is

23  based solely upon defendants' lack of possession of the note.

24      Section 3301 of the California Commercial Code defines a

25  "[p]erson entitled to enforce" as "(a) the holder of the

26  instrument, (b) a nonholder in possession of the instrument who

27  has the rights of a holder, or (c) a person not in possession of

28  the instrument who is entitled to enforce the instrument ..."

1  However, possession of the original promissory note is not

2  required to permit foreclosure.  See e.g. Rangel v. DHI Mortg.

3  Co., Ltd., U.S. Dist. LEXIS 65674, at *24 (E.D. Cal. July 20,

4  2009); Pantoja v. Countrywide Home Loans, Inc., 2009 U.S. Dist.

5  LEXIS 70856, at *14 (N.D. Cal. July, 9 2009); Calderon v. Endres,

6  2009 U.S. Dist. LEXIS 57936, at *8 (S.D. Cal. July 7, 2009).  A

7  mere allegation that a trustee or lender does not have the

8  original note or has not received it is insufficient to render

9  the foreclosure proceeding invalid. See Neal v. Juarez, 2007 U.S.

10 Dist. LEXIS 98068, WL 2140640, *8 (S.D. Cal. July, 23 2007).

11      In her complaint, plaintiff merely alleges that defendants

12 are not in possession of the note and are therefore not entitled

13 to enforce the security interest on the property.  (FAC 7:17-19.)

14 The allegation fails to support plaintiff's claim as a matter of

15 law.  Plaintiff fails to set forth any facts to support her claim

16 that defendants were not entitled to enforce the security

17 interest pursuant to § 3301.  Accordingly, defendants' motion to

18 dismiss the tenth claim for relief for wrongful foreclosure is

19 GRANTED.[4]

20 /////

21 /////

22

23      [4]   Plaintiff also asserts that defendants failed to record
and give Notice of Default as required by California Civil Code §
24 2923.5(b).  Section 2923.5(b) provides that a declaration shall
be included in a notice of default stating that "the mortgagee,
25 beneficiary, or authorized agent . . . has contacted the borrower
. . . or tried with due diligence to contact the borrower."
26 However, this section did not become "effective" until July 8,
2008, a month after the alleged default.  Furthermore, aside from
27 the conclusory allegations that defendants failed to comply with
statutory notice requirements, plaintiff alleges no facts to
28 support this claim.  Accordingly, plaintiff has failed state a
claim pursuant to this section.

**J.    Breach of Implied Covenant of Good Faith and Fair Dealing**

Additionally, plaintiff's ninth claim for relief asserts that all defendants breached the implied covenant of good faith and fair dealing.  Plaintiff specifically alleges that defendants collectively breached the implied covenant of good faith when they: (1) failed to put as much consideration to plaintiff's interest as their own interests; (2) initiated foreclosure proceedings on the property despite not having the right to do so and failure to comply with California law; (3) failed to give proper notice before commencing foreclosure; (4) sent deceptive letters to plaintiff advising plaintiff of her ability to short sale her property when defendant had no intention to act.  (FAC at 19:7-12.)

"The prerequisite for any action for breach of the implied covenant of good faith and fair dealing is the existence of a contractual relationship between the parties." <u>Smith v. City & County of San Francisco</u>, 225 Cal. App. 3d 38, 49 (1990).  "To establish a breach of an implied covenant of good faith and fair dealing, a plaintiff must establish the existence of a contractual obligation, along with conduct that frustrates the other party's rights to benefit from the contract." <u>Fortaleza v. PNC Fin. Servs. Group, Inc.</u>, 2009 U.S. Dist. LEXIS 64624, at **15-16 (N.D. Cal. July 27, 2009).  Furthermore, "a breach of the implied covenant of good faith and fair dealing involves something beyond breach of the contractual duty itself." <u>Careau & Co. v. Security Pacific Business Credit, Inc.</u>, 222 Cal. App. 3d 1371, 1394 (1990).  The "implied covenant of good faith and fair dealing is limited to assuring compliance with the express terms

24

of the contract, and cannot be extended to create obligations not contemplated by the contract." <u>Pasadena Live, LLC v. City of Pasadena</u>, 114 Cal. App. 4th 1089, 1093-1094 (2004). "[T]he implied covenant will only be recognized to further the contract's purpose; it will not be read into a contract to prohibit a party from doing that which is expressly permitted by the agreement itself." <u>Wolf v. Walt Disney Pictures and Television</u>, 162 Cal. App. 4th 1107, 1120 (2008).

Plaintiff contends that this claim is a derivative of her breach of contract claim. However, while plaintiff's breach of contract claim is alleged against only defendants CB and Delgado, plaintiff alleges this claim against all defendants. It is unclear from the allegations in the complaint what contract plaintiff is referring to and which defendant was a party to those specific contracts. Further, to the extent plaintiff's claims are based upon the same conduct giving rise to her wrongful foreclosure claims, as set forth above, plaintiff has failed to set forth sufficient facts to state a claim. Finally, plaintiff's allegation regarding the defendants sending deceptive letters regarding her ability to short sale her property is not supported by any factual allegations in the FAC and bears no relation to any contract described therein.

Accordingly, defendants' motion to dismiss plaintiff's ninth claim for relief for breach of implied covenant of good faith and fair dealing is GRANTED.

/////

/////

/////

**K.    Violations of UCL**

Finally, plaintiff's seventh claim alleges that all defendants violated California Business & Professions Code § 17200 by participating in unfair and fraudulent business practices.  Defendant argues that plaintiff fails to state a claim as she merely relies upon a conclusory assertion of unlawful, unfair, and fraudulent business practices and bases her claims upon the foregoing violations, which fail to state a claim.

The Unfair Competition Law ("UCL"), California Business and Professions Code §§ 17200, *et seq.*, forbids acts of unfair competition, which includes "any unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "The UCL is broad in scope, embracing anything that can properly be called a business practice and that at the same time is forbidden by law."  People ex rel. Gallegos v. Pacific Lumber Co., 158 Cal. App. 4th 950, 959 (2008) (internal citations omitted).  Section 17200 "'borrows' violations of other laws and treats" them as unlawful business practices "independently actionable under section 17200."  Farmers Ins. Exch. V. Superior court, 2 Cal. 4th 377, 383 (1992).  Violation of almost any federal, state, or local law may serve as the basis for a[n] [unfair competition] claim."  Plascencia v. Lending 1st Mortg., 583 F. Supp. d 1090, 1098 (9th Cir. 2008) (citing Suanders v. Superior Court, 27 Cal. App. 4th 832, 838-39 (1994)); see Hauk v. JP Morgan Chase Bank United States, 552 F.3d 1114 (9th Cir. 2009) ("California's UCL has a broad scope that allows for 'violations of other laws to be treated as unfair competition that is independently actionable'

26

while also 'sweep[ing] within its scope acts and practices not specifically proscribed by any other law.").

Because plaintiff's UCL claim is predicated on facts supporting plaintiff's other claims, all of which the court has dismissed, defendants' motion to dismiss plaintiff's seventh cause of action for violations of California Business & Professions Code § 17200 is GRANTED.

### CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is GRANTED.  Plaintiff is granted fifteen (15) days from the date of this order to file a second amended complaint in accordance with this order.  Defendants are granted thirty (30) days from the date of service of plaintiff's second amended complaint to file a response thereto.

IT IS SO ORDERED.

DATED: October 21, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

27